UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES FARNAN

    Plaintiff,

  v.

JOSEPH LEHMAN,

    Defendant.

Case No. C04-5619RBL

REPORT AND RECOMMENDATION

**NOTED FOR:**
**AUGUST 5th, 2005**

    This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B). Before the court is defendant's motion for summary judgment. (Dkt. # 14). Plaintiff has not responded and instead filed a motion for "Emergency Stay." (Dkt. # 15). Plaintiff has also filed a document entitled "Motion for Enlargement of Time to Respond to Report and Recommendation." (Dkt. # 17). Plaintiff's motions will be dealt with by separate order.

    In this action plaintiff challenges the failure of the Department of Corrections to release him prior to the expiration of his maximum sentence. He alleges a Department policy, 350.200, prevented the Department from considering release plans he submitted for community custody placement. Plaintiff alleges that because he had been referred for civil commitment as a sexual

REPORT AND RECOMMENDATION - 1

1 predator his plans would not be considered or were arbitrarily denied.  The facts and evidence
2 submitted by defendant show plaintiff's plans were considered

### FACTS

Plaintiff has not responded to the Summary Judgement filed in this action.  The court adopts the facts submitted by defendant Lehman.  Defendant Lehman indicates plaintiff was convicted of attempted rape in the second degree by jury verdict on May 15th, 1996.  He was sentenced to 102 months and 24 months community placement. (Dkt. # 14, page 2).  Plaintiff had an anticipated early release date of July 1st, 2002. <u>This was the date he would become eligible for community custody placement in lieu of "earned early release."</u>  His maximum release date was August 8th, 2004. (Dkt. # 14, page 2).  Plaintiff indicates his anticipated release date was June 18th, 2002 and he was actually released on August 6th, 2004.  The difference in dates is irrelevant to the courts analysis. (Dkt. # 5, complaint).

Defendant Lehman establishes that proposed release plans for possible transfer to community custody are investigated by Community Correctional Officers, (CCO.).  (Dkt. # 14, page 2).  He further established that plaintiff submitted his first proposed release plan in September of 2003. (Dkt. # 14, page 3).  A CCO attempted to contact the sponsor, Mohammad Joban, on September 9th, 2003 to arrange for a site visit to the place where Mr. Farnan would reside, a mosque where Mr. Joban and his family also lived.  Mr. Joban did not respond to phone calls and on September 19th, 2003 the plan was denied because the CCO had not been able to contact the sponsor. (Dkt. # 14, page 3).

Defendant Lehman established that on October 2nd, 2003 Mr. Jorban contacted CCO Jeff Blodgett.  CCO Blodgett walked through the mosque and spoke with Mr. Jordan later that same day.  Plaintiff's release plan was denied for a number of reasons.  The plan sponsor, Mr. Jorban was not aware of plaintiff's entire criminal history. The plan sponsor did not have a relationship with plaintiff prior to incarceration.  The plan would place plaintiff in close proximity to Mr. Jordan's wife and family who lived in the mosque. (Dkt. # 14, page 4).  P plaintiff prior convictions showed a history of attacks on strangers and an attempt to rape his former landlady. (Dkt. # 14, page 4).

REPORT AND RECOMMENDATION - 2

There were further concerns that Mr. Jorban may not have the ability to spot signs in plaintiff's behavior that should be reported immediately to the Department of Corrections. (Dkt. # 14, page 4).

Plaintiff submitted a second plan which was also investigated and denied. That plan called for plaintiff to live in a residence in a high crime neighborhood with many bars and taverns in close proximity. The residence rented out rooms and ran a daycare center downstairs from the living area. The residence was located in an area with high foot traffic, gang activity, and school children traveling back and forth. (Dkt. # 14, page 5). Further, the sponsor had no prior relationship with plaintiff, and plaintiff had responded to an add in the paper. (Dkt. # 14, page 5). The day care down stairs and the fact that rooms were rented to boarders made this plan unacceptable to the Department. (Dkt. # 14, page 5).

Plaintiff admitted in deposition that his plans had been investigated and denied based on a number of factors. (Dkt. # 14, page 9). Defendants contend the complaint should be dismissed for the following reasons: plaintiff was not eligible for earned early release; the doctrine of favorable termination mandates dismissal; lack of personal participation; the claims are barred by the Eleventh Amendment; Plaintiff had no liberty interest in early release; and qualified immunity precludes damages in this case. (Dkt. # 14).

The complaint alleges DOC policy 350.200 precluded plaintiff from being released once the End of Sentence Review Committee, (ESRC), determined he was being referred for commitment as a sexually violent predator. (Dkt. # 5, page 3 ¶ 7). Plaintiff contends he submitted 3 plans, but has come forward with no evidence showing what his third plan was or when it was submitted. Indeed, other than motions to stay, plaintiff has not responded to the motion for summary judgment.

Plaintiff alleges that if the ESRC referred an inmate for civil commitment his release plans would not be reviewed until three months before his maximum release date. (Dkt. # 5 ¶ 17) The facts of this case directly contradict plaintiff's assertion and shows two plans being investigated and denied. The first 11 months before the maximum release date, and the second 8 months before the maximum release date. (Dkt. # 14, pages 3 through 5).

Plaintiff also alleges that sex offenders release plans were "slow walked". (Dkt. # 5 ¶'s 23

REPORT AND RECOMMENDATION - 3

and 24). Again the record placed before the court contradicts plaintiff's assertions. Defendant alleges plaintiff's first plan was submitted in September of 2003. Thus, within no more then nine days of plaintiff submitting his first plan, a CCO was attempting to contact the sponsor. When those attempts failed the plan was rejected on September 19th, 2003. (Dkt. # 14, page 3). When the sponsor contacted the Department in October, an on site visit was conducted that same day. (Dkt. # 14, page 3).

The record does not disclose when plaintiff's second plan was submitted. Presumably it would not have been before the first plan was denied on September 19th, 2003. The plan was denied December 12th, 2003. Thus, there is no evidence to support plaintiff's assertion his plans were "slow walked."

Finally, plaintiff alleges release plans submitted by sex offenders were not being approved or "in some cases not investigated." (Dkt. # 5, page 9 ¶ 26). The record placed before the court shows two plans being submitted, timely investigated, and denied for proper reasons. (Dkt. # 14).

## STANDARD

Pursuant to Fed. R. Civ. P. 56 (C), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (C). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v.

REPORT AND RECOMMENDATION - 4

1  Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical
2  Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).
3        The court must liberally construe plaintiff's pleadings because he is acting pro se.  However,
4  there are limits as to what a court may infer construing a complaint.  The court cannot add facts to a
5  complaint that have not been plead and cannot supply essential elements to a complaint that the
6  plaintiff has failed to plead.  Pena v. Gardner, 976 F.2d 469 (9th Cir. 1992).
7        In order to state a claim under 42 U.S.C. § l983, a complaint must allege that (l) the conduct
8  complained of was committed by a person acting under color of state law and that (2) the conduct
9  deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United
10 States.  Parratt v. Taylor, 45l U.S. 527, 535 (l98l), overruled on other grounds, Daniels v. Williams,
11 474 U.S. 327 (1986).  Section l983 is the appropriate avenue to remedy an alleged wrong only if
12 both of these elements are present.  Haygood v. Younger, 769 F.2d l350, l354 (9th Cir. l985), cert.
13 denied, 478 U.S. 1020 (l986).

## DISCUSSION

15    In the complaint and in defendant's motion for summary judgment a number of important state
16 cases are cited.  The crux of plaintiff's case is the argument that he had a state created liberty interest
17 protected by due process in "early release."  Review of the cases cited may be helpful to the court.
18       The primary case cited by plaintiff in the complaint is In Re Dutcher, 114 Wash App 755 (2002).
19 The Washington State Court of Appeals held that an inmate has a limited, but protected, liberty interest
20 in earned early release credits.  Dutcher was a convicted sex offender who was never eligible for earned
21 early release. It is therefore safe to assume the term "earned early release" as used in that case
22 encompasses community custody placement in lieu of earned early release.  When Dutcher attempted to
23 submit a plan for community custody placement he was told by the Department of Corrections he could
24 not submit the plan because he had been referred for commitment as a sexually violent predictor.  The
25 court held Washington's statutory system created a liberty interest and the Department of Corrections
26 could not refuse to accept or refuse to investigate Dutcher's plan.  The Washington State Court of
27 Appeals did not hold Mr. Dutcher was entitled to release, only that the Department had to consider his

REPORT AND RECOMMENDATION - 5

plan. <u>In Re Dutcher</u>, 114 Wash App 755 (2002).

Unlike Mr. Dutcher, plaintiff's plans were accepted and considered. (Dkt. # 14, pages 3 through 5). Thus, the holding of <u>Dutcher</u> is not applicable. Plaintiff seems to cite <u>Dutcher</u> for the proposition that he had an interest in being released on the date he became eligible for community placement in leu of earned early release. <u>Dutcher</u> does not stand for that proposition. The holding does indicate the Department of Corrections had a duty to consider and investigate plans submitted. They did so in plaintiff's case.

The next case cited by plaintiff is <u>In re Capello</u>. Plaintiff does not give a full citation and the court assumes he is referring to <u>In Re Capello</u>, 106 Wash App. 576 (2001). Mr. Capello entered an *Alford* plea in 1991. In 1991, at the time of sentencing, the sentencing judge had the option of making a pre approved address mandatory for community custody placement. The sentencing judge in Capello chose not to impose that condition. In 1992 the law was changed to make the condition mandatory unless it was waived by the sentencing judge. <u>See</u>, RCW 9.94A.120 (8)(b)(vi) (1992). Mr. Capello submitted a plan and was told he must have a pre approved address. The Washington State Court of Appeals granted his petition and held the Department of Corrections lacked authority to impose a condition on a sentence when the sentencing judge had rejected that condition. Again, the court did not mandate release and only held the Department could not require a pre approved address for persons sentenced prior to the 1992 amendments where the sentencing court had rejected imposing that condition.

The plaintiff in this case was convicted May 15th, 1996, well after the change to the sentencing law that made the condition of a pre approved address mandatory. <u>Capello</u> has no bearing on this case.

Finally, Plaintiff cites to <u>In Re Stewart</u>. Again, petitioner does not provide a cite in the complaint, but from the context of the argument he must be referring to <u>In Re Stewart</u>, 115 Wash. App. 319 (2003). After the Washington State Court of Appeals 2001 decision in <u>Capello</u> the legislature amended Washington's law to indicate the Department of Corrections had the legal authority to demand a pre approved address prior to release on community custody placement. The

REPORT AND RECOMMENDATION - 6

amendments supposedly clarified that the Department had this authority since 1988 when community custody placement in lieu of earned early release was introduced. The Washington State Court of Appeals rejected the contention that this legislation applied retroactively on this issue, but acknowledged the prospective application of the statutes amendments. The decision is based on a separation of powers analysis.

Thus, under Washington law, according to the Washington Court of Appeals, the sentencing judge had to impose the condition of a pre approved address for community placement as a special condition of the sentence prior to 1992. After 1992 the condition was mandatory unless specifically waived by the sentencing judge. After 2002 the Department could demand the pre approved address separate and apart from conditions imposed at sentencing. In Re Stewart, 115 Wn. App. 598 (2003).

Plaintiff, in this case, was sentenced in 1996. An approved address was mandatory unless the sentencing judge waived the condition. Plaintiff did not submit a proposed plan until September of 2003. Stewart was decided in February of 2003 and controls. The Department had a duty to consider and investigate plaintiff's release plans. They did so. The Department had the ability to require an approved address unless that condition was waived. There is no evidence to show the condition was waived or that the condition was imposed. In accordance with the holding in Stewart plaintiff's release plans were considered and denied on the merits. None of the cases cited by plaintiff stand for the proposition that he was held improperly or unlawfully beyond his release date.

Defendant relies on In Re Crowder, 97 Wn. App. 598 (1999). In that case the Washington State Court of Appeals held that an inmate statutorily subject to community custody or community placement could not obtain general earned early release. Instead of earned early release the person was subject to the Department of Corrections considering them for discretionary transfer to community custody. In Re Crowder, 97 Wn. App. At 600. The Crowder court did find there is a "limited liberty interest" but does not discuss what procedure would be mandated by such an interest.

Crowder was convicted of two counts of rape second degree. He became eligible for community placement in lieu of earned early release on October 24th, 1997. Crowder had worked

REPORT AND RECOMMENDATION - 7

with Department of Corrections officials and obtained approval of a release plan.  One day before his scheduled release his sponsor was arrested on fourth degree assault charges and evicted from her apartment.  Release on the approved plan would have placed Mr. Crowder in violation of the conditions of release.  Crowder's release was canceled and he was released 101 days later, after he was able to obtain approval of a new plan.  The court in that case held there was no due process violation.

The holding of <u>Crowder</u> makes clear that the liberty interest at stake is limited and does not include release.  The <u>Crowder</u> court indicates only minimal due process is needed but does not give any guidance as to what process might be appropriate.  The court notes the decision to release an inmate to community custody placement is discretionary.

A.   <u>Earned Early Release</u>.

Defendant Lehman's first argument is that plaintiff was never entitled to earned early release and this action must therefore be dismissed.  The court understands the argument and defendant is technically correct.  However, the court must liberally interpret the complaint.  <u>Pena v. Gardner</u>, 976 F.2d 469 (9th Cir. 1992).  Review of the <u>Dutcher</u> case shows that even the Washington Court of Appeals uses terms such as early release and community placement improperly and almost interchangeably.  The court concludes that as used by a pro se plaintiff the term earned early release may encompass the concept of community custody placement which is available in lieu of earned early release for inmates convicted of certain crimes.

B.   <u>Favorable Termination</u>.

Application of the doctrine of favorable termination would send plaintiff to habeas corpus to seek relief in that forum and not allow a civil rights action until habeas relief had been granted.

Under 28 U.S.C. § 2254, the district court may entertain an application for a writ of habeas corpus only from a person in custody pursuant to the judgment of a state court. The custody requirement of the habeas corpus statute is designed to preserve the writ as a remedy for severe restraints on individual liberty.  <u>Hensley v. Municipal Court, San Jose Milpitas Judicial District</u>, 411 U.S. 345, 351 (1973). The person must be in custody pursuant to the conviction or sentence under

REPORT AND RECOMMENDATION - 8

attack at the time the petition is filed. <u>Maleng v. Cook</u>, 490 U.S. 488, 490-91 (1989); <u>Carafas v. LaVallee</u>, 391 U.S. 234, 238 (1968).

The problem with defendant's argument is that plaintiff has been released from his criminal sentence. He is no longer in custody and not able to file any habeas action to contest the denial of community custody placement. As habeas is not available plaintiff can now seek relief through a civil rights action.

  C. <u>Personal Participation</u>.

To obtain damages a plaintiff must show that a defendant personally participated in the alleged violation. <u>Leer v. Murphy</u>, 844 F.2d 628 (9th Cir. 1988). Here, plaintiff challenges a Department policy, 350.200. Defendant Lehman might be liable for his part in enacting the policy if the policy was applied to plaintiff. Plaintiff has failed to show that the policy was ever applied to him. Plaintiff alleges the policy prevented the Department from considering his plans for release. The facts presented by defendant show Plaintiff's release plans were investigated and considered. Indeed, his first proposed release plan was submitted in September of 2003. By that point in time the defendant and the Department of Corrections had the benefit of the Washington State Court of Appeals decision of <u>In Re Stewart</u>, 115 Wn. App. 598 (2003).

Plaintiff has failed to show that any action of Defendant Lehman deprived the plaintiff of any constitutional right. To the extent that this action seeks damages from defendant Lehman in his personal capacity the defendant's motion for summary judgment should be **GRANTED.**

  D. <u>The Eleventh Amendment</u>.

The defendant correctly notes that the state cannot be sued for damages in federal court. <u>Edelman v. Jordan</u>, 415 U.S. 651 (1974). To the extent that this action seeks damages from defendant Lehman in his official capacity the defendant's motion for summary judgment should be **GRANTED.**

  E. <u>Liberty Interest</u>.

Defendant argues the plaintiff has no "unqualified liberty interest in early release". (Dkt. # 14, page 13). The court agrees with defendants statement, but that does not end the matter. Plaintiff

REPORT AND RECOMMENDATION - 9

in this case does not have an unqualified interest because he was only entitled to community custody placement "in lieu of earned early release." However, the Washington State Court of Appeals has determined that an inmate in the same position as plaintiff does have a "limited, but protected liberty interest" in earned early release credits. In Re Dutcher, 114 Wash. App. 755 (2002); In Re Crowder, 97 Wn. App. 598 (1999). While he had no right to release, the state court had held the plaintiff was entitled to have the department consider his release plans.

The question posed is whether this "limited but protected liberty interest" rises to the level of an interest protected by the Due Process Clause of the Fourteenth Amendment. See, Toussaint v. McCarthy, 801 F. 2d 1080 (9th Cir. 1986)(discussing what is needed for a federal court to find state created liberty interest protected by the Untied States Constitution). Neither party has properly identified or briefed this issue in this case and the court declines to consider the issue without full briefing.

      F.     Qualified Immunity.

This Report and Recommendation has already indicated dismissal of the action is proper for lack of personal participation and under the Eleventh Amendment. In the alternative the court reaches the issue of qualified immunity. Qualified immunity is an affirmative defense. Defendant has raised the defense of qualified immunity. (Dkt. # 14). Defendant is entitled to qualified immunity from damages for civil liability as long as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular official. Id. at 819.

To be clearly established, the law must be sufficiently clear that a reasonable official would understand that his or her action violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Thus the contours of the right must have been articulated to some degree. The court should look to whatever decisional law is available to determine whether the law was clearly established at the time the alleged acts occurred. Capoeman v. Reed, 754 F.2d 1512, 1514 (9th Cir. 1985). In

REPORT AND RECOMMENDATION - 10

analyzing a qualified immunity defense, the court must determine:  (1) what right has been violated; (2) whether that right was so "clearly established" at the time of the incident that a reasonable officer would have been aware of its constitutionality;  and (3) whether a reasonable public officer could have believed that the alleged conduct was lawful.  See  Gabbert v. Conn, 131 F.3d 793, 799 (9th Cir.1997);  Newell v. Sauser, 79 F.3d 115, 117 (9th Cir.1996).  Qualified immunity is immunity from suit, not just from liability.  Harlow v. Fitzgerald, 457 U.S. 800 (1982).

Here, the right at issue is the right to have a release plan considered by the Department of Corrections.  Prior to the decision in In Re Crowder, 97 Wn. App. 598 (1999), a reasonable prison official would have been able to rely on Greenholtz v, Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979) for the proposition that an inmate has no inherent right to be conditionally released.  Further, Crowder affirmed the proposition that release was discretionary with the department.  In Re Crowder, 97 Wn. App. 598 (1999).  To be sure, Crowder informed the department there was a "limited liberty interest", but Crowder does not indicate or articulate what level of due process is needed to protect that interest or even if that interest is protected by the Fourteenth Amendment Due Process Clause.

In 2001 the department's discretion in considering release plans was limited.  The Washington State Court of Appeals in formed the Department it could not mandate an approved address for a person convicted before 1992 if a sentencing judge had considered and rejected that condition in sentencing.  In Re Capello, 106 Wash App. 576 (2001).  The Capello decision does not end the analysis even on that issue.

The departments reaction to the Capello decision was to attempt to change the law to "clarify" that the department did have the authority to demand an approved address prior to release.  The legislation was certainly intended to be retroactive.  The proposed amendments were passed and the department was certainly able to rely on the statute until it was declared to violate the separation of powers doctrine in 2003.  In Re Stewart, 115 Wn. App. 319 (2003).

By February of 2003 the department was on notice that the legislation allowing the department to demand an approved address for inmates sentenced between 1988 and 1992 was

REPORT AND RECOMMENDATION - 11

invalid.  The department was also aware the legislation allowed for the department to prospectively require an approved address. Further, as of 1992 it appears the address was a standard condition of sentencing unless specifically waived by the sentencing judge.  <u>In Re Stewart</u>, 115 Wn. App. 319, 325 (2003).

The holding in <u>Dutcher</u> in 2002 informed the department its discretion did not extend to a refusal to consider a plan simply because the department had referred the person for civil commitment.   Plaintiff in this action was convicted in 1996.  He submitted two plans and both were considered on the merits. Further, the Washington State Courts have yet to define what level of due process they require from the state to protect the "limited liberty interest" at stake.  It does not appear there was a constitutional violation in this case, and a reasonable prison official could have believed his actions constitutional.  At the least, defendant Lehman is entitled to qualified immunity from suit in this action.

### CONCLUSION

For the reasons outlined above the undersigned recommends the court **GRANT** defendant's motion for Summary Judgment and this action be **DISMISSED WITH  PREJUDICE.**  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **AUGUST 5th, 2005**, as noted in the caption.

DATED this 11th day of June 2005.

<u>/S/ J. Kelley Arnold</u>
J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12